UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| ZUNUM AERO INC.,<br><br>　　　　　　　Plaintiff,<br><br>　　-against-<br><br>ELECTRA.AERO, INC.,<br><br>　　　　　　　Defendant. | **COMPLAINT** |

Plaintiff Zunum Aero Inc. ("Zunum"), by and through its undersigned attorneys, for its complaint against Electra.aero, Inc. ("Electra"), alleges as follows:

## NATURE OF ACTION

1. Founded in 2013, Zunum sought to revolutionize short-haul aviation with its pioneering hybrid electric aircraft and propulsion. After years of operating in stealth mode and developing a portfolio of invaluable trade secrets, Zunum was driven out of business by the calculated predatory actions of aerospace giant The Boeing Company and Boeing HorizonX Ventures LLC (together, "Boeing"), a nonparty here, who invested in Zunum and served on its Board.

2. Zunum tried its claims against Boeing to a federal jury sitting in the Western District of Washington in May 2024. That jury found that Boeing willfully and maliciously misappropriated Zunum's trade secrets; breached a contract with Zunum; and tortiously interfered with Zunum's business expectancy with Safran. The jury awarded Zunum over $90 million dollars. The court later set aside the verdict in its entirety under Federal Rules of Civil Procedure 50 and 59, and Zunum's appeal of that post-verdict order is proceeding before the Ninth Circuit.

3.      In the course of the *Boeing* litigation, Zunum learned that Defendant Electra's technology and business plan were derived using Zunum's trade secrets without Zunum's knowledge or approval.  Indeed, Zunum learned that Electra had been incubated by Boeing as a Zunum replacement, and that Boeing, in creating Electra, provided Electra (and certain persons who later joined Electra) with Zunum's confidential information—including, Zunum believes, its trade secrets.  Electra's own business plan stated it "buil[t] on [the] excellent work" of one of the secret Boeing programs that a federal jury found to have misappropriated Zunum's trade secrets, and that a Boeing executive implicated in that misappropriation had assisted extensively. Indeed, a document obtained in discovery in the *Boeing* litigation and presented to the jury shows that Electra asked Boeing for a "[f]ull indemnification" from Boeing "against any claims from Zunum" as the parties discussed Zunum's information.

4.      Electra is now bringing its first hybrid aircraft to market, with orders valued at $9 billion, while Zunum was forced to cease operations.  Zunum brings this action to recover for the misappropriation of its trade secrets, which Electra has misappropriated to achieve its own success.

## PARTIES

5.      Zunum, formerly known as Tzunum, Inc., is a Delaware corporation headquartered in Redmond, Washington.

6.      On information and belief, Electra is a Delaware corporation with a principal place of business in Manassas, Virginia.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Zunum brings a claim under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.

8. This Court has supplemental subject-matter jurisdiction under 28 U.S.C. § 1367 over Zunum's remaining state-law claim because it is so related to Zunum's claim under the Defend Trade Secrets Act as to form part of the same case or controversy.

9. This Court has personal jurisdiction over Electra because Electra is incorporated in Delaware.

10. Venue is proper in this District because Electra resides in Delaware. *See* 28 U.S.C. § 1391(b)(1).

## FACTUAL ALLEGATIONS

**A.  Zunum Develops Technologies in Stealth, Boeing Engages as an Investor**

11. Zunum was founded in 2013 by Ashish Kumar, Ph.D., and Matt Knapp, who conceived of proprietary, innovative technologies to disrupt short-haul air transport with hybrid-electric and all-electric aircraft and hybrid-electric and all-electric propulsion systems. These technologies would dramatically improve mobility and greatly reduce or eliminate aviation emissions (while reducing noise pollution) on commercial flights up to 1,500 miles—opening up a trillion dollar market over twenty years.

12. Dr. Kumar and Mr. Knapp formed Zunum to develop the world's first hybrid-electric and all-electric (alternately "hybrid-to-electric," as a converging process) regional aircraft for commercial service and to develop this new market as the first-mover.

13. Zunum's aircraft and business plan offered to increase efficiency in door-to-door mobility, reduce emissions, reduce noise, and drive down the cost of short-haul air travel substantially lower than commercial air travel today. By enabling more efficient, smaller, and quieter aircraft, the market and consumers would experience faster and more customized routing, creating time, fuel, emissions, and convenience efficiencies, which in turn would lower consumer costs and substantially expand the commercial aviation market.

14. From 2013 through 2016, Zunum performed foundational work developing trade secrets. Zunum discovered that, for reasons including rapid advancements in battery technology, hybrid-electric planes flying passengers over regional ranges—trips too expensive to fly on larger planes—could be economically competitive and technically achievable starting with 9-seat commuter aircraft in the early 2020s. At that time, industry incumbents like Boeing projected that such technology was decades away from viability.

15. Starting in August 2016, Zunum began sharing details of its trade secrets with Boeing under a proprietary information agreement for potential investment.

16. For months, Boeing received hundreds of pages of confidential documents, held meetings and calls, obtained technical data, and had leading Boeing experts evaluate Zunum's data.

17. In March 2017, Boeing invested $5 million in Zunum, alongside other investors. Boeing's investment was governed by a 2017 investor-rights letter that maintained Zunum's confidences (including its trade secrets) in confidence, and that specified further that Boeing had no right to use Zunum's confidences "for any purpose (other than to manage [Boeing's] investment in [Zunum])."

18. With funding, Zunum ramped up its trade-secret R&D, hiring 47 full-time employees (and many more contractors) across three centers in Washington, Illinois and Indiana, targeting its first aircraft for entry to service in 2023.

19. Zunum continued developing its trade secrets. As described by the court to the jury in the *Boeing* litigation, and as later found by the jury in that case, the trade secrets developed by Zunum that were shared with Boeing (the "Trade Secrets") are as follows:

    a. <u>Trade Secret A:</u> *Design Requirements and Objectives for Hybrid-Electric Aircraft*. Comprises certain design requirements and objectives for

4

        hybrid-electric aircraft relating to three categories of information: (1) range, speed, payload, and economics; (2) aircraft; and (3) noise and runway

b. <u>Trade Secret B</u>: *Data Compilations and Forecasts*. Comprises a compilation of data concerning the components of hybrid-electric aircraft, as well as forecasts from that data. The component data concerns the following: (1) batteries and battery packs; (2) range extending generators; (3) other hybrid-electric powertrain components; and (4) aircraft.

c. <u>Trade Secret C</u>: *Functionalities of the APAC Software Platform*. Comprises the software design concepts and functionalities of a hybrid-electric aircraft design sizing and performance modeling software.

d. <u>Trade Secret D</u>: *Optimization Studies and Methods*. Comprises information reflected in certain trade and optimization studies, as well as the optimization methods Zunum claims to have used to conduct those studies.

e. <u>Trade Secret E</u>: *ZA-10 Specifications*. Comprises the design specifications for Zunum's ZA-10 aircraft.

f. <u>Trade Secret F</u>: *Insights into the Design of Hybrid-Electric Aircraft*. Comprises insights into the design of hybrid-electric aircraft relating to the following: (1) identification of design space; (2) aircraft and powertrain configuration and sizing; (3) economics and market; and (4) ownership, maintenance, and operating costs.

g. <u>Trade Secret G</u>: *Megawatt-Class Hybrid Powertrain System*. Comprises a design for a megawatt-class, 540-volt hybrid powertrain targeted at a ten-seat commuter aircraft and scalable to 4 megawatts for a fifty-seat regional aircraft.

h. <u>Trade Secret H</u>: *Prototype and Testing Plan*. Comprises a plan to test Zunum's hybrid-electric powertrain, including a replica ground prototype and a flight prototype. The flight prototype includes five phases: one ground phase, and four flight phases.

i. <u>Trade Secret I</u>: *System Controller*. Comprises a hybrid powertrain system controller for a series hybrid powertrain that interfaces to higher-level flight and aircraft management systems and that commands all subsystems of the powertrain. The system controller dynamically monitors and adjusts the power outputs of the range extender, which is a turbine coupled to generators with AC/DC rectifier), and the battery packs, so as to deliver a desired "power split" of generated versus stored power to a propulsion motor.

j. Trade Secret J: *Propulsion Motor Controller System*. Comprises a motor controller system to power the propulsion motors in a megawatt-scale aircraft. The motor controller system includes a controller and three inverters.

k. Trade Secret K: *Range Extender*. Comprises certain sizing and operational requirements for a range extender for a megawatt-class hybrid powertrain.

l. Trade Secret L: "*Flow-Down" Method*. Comprises a multi-step method to "flow down" the overarching requirements for a hybrid-electric aircraft to identify the specific requirements for each of the aircraft's lower-level systems, subsystems, and individual devices.

m. Trade Secret M: *Requirements for Hybrid Powertrain*. Comprises using the "flow-down" method to obtain the specific requirements for key subsystems and components of the powertrain for Zunum's ZA-10, 1 megawatt aircraft.

n. Trade Secret N: *Hybrid Cost Methods*. Comprises costing methods, analyses, and forecasts Zunum claims to have used to analyze the market for hybrid-electric aircraft.

o. Trade Secret O: *Business Strategies and Insights*. Comprises certain business strategies to pursue regional aircraft and broader mobility markets, as well as insights into unfolding opportunities and threats.

p. Trade Secret P: *Hybrid-Electric Aircraft Commercialization Plan*. Comprises a hybrid-electric aircraft and hybrid powertrain development and production plan for market entry in the 2020s.[1]

20. In May 2018, Boeing invested another $4 million in Zunum.

**B.   Boeing Misappropriates the Trade Secrets and Disrupts Zunum's Financing**

21. Unbeknownst to Zunum, over this time, Boeing launched a number of hybrid-electric aircraft and propulsion programs in parallel—including what Boeing called "Thin Haul"—and, in doing so, misappropriated Zunum trade secrets and used Zunum confidences in breach of contract.

---

[1] These correspond to the following trade secrets proved to jury in the Boeing litigation: Trade Secret Nos. 1–13 and Trade Secret Nos. 16, 18, and 19.

22. These efforts by Boeing, and its tortious interference with Safran, eventually caused Zunum to cease operations in November 2018.

**C.    Boeing Births Electra from the Ashes of Zunum, Building on the Trade Secrets**

23. After Zunum ceased operations, Boeing sought to "reconstitut[e] a market play similar to what Zunum was attempting." Boeing pursued initiatives with aerospace multinational Safran on that market play, but also "had an idea": incubate a new company to replace Zunum.

24. That new company is Electra. Electra's business plan expressly stated that it "buil[t] on [the] excellent work" from the "Thin Haul" study that Boeing had conducted after it made its initial 2017 investment in Zunum.

25. The Thin Haul Study was a study undertaken by Boeing which acquired, used, and ultimately misappropriated Zunum's Trade Secrets.

26. Further, Electra's business plan gave special thanks to Boeing executive Steve Shumate, who was involved with doing due diligence on Zunum prior to Boeing's 2017 investment, and co-led the Thin Haul study.

27. Indeed, as part of incubating Electra, a senior Boeing executive, Steven Nordlund, proposed that the new venture "[i]nvestigate Zunum IP." Thereafter, Electra's founder, John Langford, asked for a "[f]ull indemnification" from Boeing "against any claims from Zunum[.]".

28. Electra was incorporated in October 2019, on a "path of spinning out" from Boeing, with plans to engage Zunum partners JetBlue and Safran. Mr. Langford and Dr. Bradley, along with others, left Boeing in 2020 to join Electra.

**D.    Electra Pursues Zunum's Business**

29. On information and belief, Electra also improperly acquired and misappropriated the Trade Secrets through Boeing; former Boeing employees who were exposed to the Trade

7

Secrets and later employed by Electra (such as Dr. Marty Bradley); and Aurora Flight Sciences, a non-party company wholly owned by Boeing.

30. Electra hired three former Zunum employees and consultants: Dr. Oliver Masefield, Randy Griffith, and Dr. Venkat Viswanathan. On information and belief, Electra misappropriated the Trade Secrets through them.

31. On information and belief, Electra also maintains a relationship with Safran, through which Electra misappropriated the Trade Secrets.

32. Electra is developing an aircraft and powertrain (the EL-9),[2] along with marketing and business plans, that, on information and belief, are similar to the ZA10 class of aircraft and powertrain—and related marketing and business plans—developed by Zunum. On information and belief, Electra improperly acquired and then improperly used or disclosed the Trade Secrets in order to propel its business, including creation of the EL-9.

33. As of March 2025, Electra has an order book for its aircraft valued at nearly $9 billion.[3]

E.   **Zunum Secures a $90+ Million Jury Verdict Against Boeing**

34. Zunum sued Boeing in November 2020 in a case captioned (after removal to federal court) *Zunum Aero, Inc. v. The Boeing Company, et al.*, No. 21-cv-00896 (W.D. Wash.).

35. Zunum alleged, among other claims, that Boeing misappropriated the Trade Secrets.

---

[2]    *See Electra Reveals Design for EL9 Ultra Short Hybrid-Electric Aircraft* (Nov. 13, 2024), *available at* https://www.electra.aero/news/electra-reveals-design-for-el9-ultra-short-hybrid-electric-aircraft

[3]    *See Electra Secures 2,200 Pre-Orders for its Groundbreaking Ultra Short* Aircraft (Mar. 20, 2025), available at https://www.electra.aero/news/electra-secures-2-200-pre-orders.

36. During the course of the *Boeing* litigation, Zunum learned, including through documents quoted or mentioned above, that Electra's technology and business plan were derived using Zunum's Trade Secrets without Zunum's knowledge or approval.

37. In May 2024, Zunum tried its claims against Boeing (including the trade-secret misappropriation claims) to a jury. During an eight-day trial, the jury heard testimony from 17 witnesses, including Zunum's five experts, and received more than 200 exhibits.

38. The jury deliberated for two days and found that Zunum established that the Trade Secrets listed in ¶¶ 19a.–p., above, were trade secrets. The jury also found that Boeing misappropriated eleven of the Trade Secrets. The jury further found that this misappropriation was willful and malicious.

39. The jury awarded Zunum approximately $80 million on the trade-secrets claims, subject to trebling, and millions more on tortious-interference claims.

40. After entry of the verdict, Boeing moved for judgment under Rule 50(b), or, alternatively, a new trial under Rule 59. The court granted Boeing's Rule 50(b) motion, and later granted its Rule 59 motion in the alternative.

41. Zunum has appealed the court's post-verdict rulings, and the appeal is currently pending before the Ninth Circuit.

## CAUSES OF ACTION
### Count I: Misappropriation of Trade Secrets
**(Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.)**

42. Zunum realleges and incorporates by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

43. Zunum owns the Trade Secrets, which relate to commercial hybrid-electric or all-electric aircraft and propulsion, and related market opportunities, as alleged above in paragraphs ¶¶ 19a.–p.

44. Zunum has taken significant measures to maintain the secrecy of its Trade Secrets.

45. The Trade Secrets are valuable to Zunum and derived value from not being generally known.

46. Electra acquired the Trade Secrets by improper means because the Trade Secrets were disclosed under the protection of confidentiality agreements and otherwise subject to confidentiality obligations.

47. Electra acquired the Trade Secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use.

48. Electra improperly used or disclosed the Trade Secrets to develop hybrid and all-electric aircraft, and hybrid and all-electric propulsion systems.

49. Electra's use or disclosure of the trade secrets have harmed and will continue to harm Zunum because it deprives Zunum of the economic and competitive value of that intellectual property.

50. Electra's misappropriation of the Trade Secrets was willful and malicious.

<b><u>Count II: Misappropriation of Trade Secrets</u></b><br>
<b>(Virginia Uniform Trade Secrets Act, Code Va. § 59.1-336 <i>et seq</i>.)</b>

51. Zunum realleges and incorporates by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

52. Zunum owns the Trade Secrets, which relate to commercial hybrid-electric or all-electric aircraft and propulsion, and related market opportunities, as alleged above in paragraphs ¶¶ 19 a.–p.

53. Zunum has taken significant measures to maintain the secrecy of its Trade Secrets.

54. The Trade Secrets are valuable to Zunum and derived value from not being generally known.

55. Electra acquired the Trade Secrets by improper means because the Trade Secrets were disclosed under the protection of confidentiality agreements and otherwise subject to confidentiality obligations.

56. Electra acquired the Trade Secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use.

57. Electra improperly used or disclosed the Trade Secrets to develop hybrid and all-electric aircraft, and hybrid and all-electric propulsion systems.

58. Electra's use or disclosure of the trade secrets have harmed and will continue to harm Zunum because it deprives Zunum of the economic and competitive value of that intellectual property.

59. Electra's misappropriation of the Trade Secrets was willful and malicious.

## **PRAYER FOR RELIEF**

WHEREFORE, judgment should be entered in favor of Plaintiff and against Defendant, for one or more of the following forms of relief or some combination of them:

(a) Damages from the misappropriation of trade secrets, including for actual loss and unjust enrichment;

(b) The imposition of a reasonable royalty for the misappropriation of Zunum's Trade Secrets;

(c) Exemplary damages and attorney's fees for willful and malicious misappropriation of trade secrets;

(d) An award of all costs and attorneys' fees pursuant to any other applicable statute or authority; and

(e) Any other relief this Court deems just and proper.

Dated: July 25, 2025

OF COUNSEL:

HOLWELL SHUSTER
  &amp; GOLDBERG LLP
Vincent Levy*
Scott M. Danner*
Brian T. Goldman*
425 Lexington Avenue
New York, New York 10017
Telephone: (646) 837-5151
vlevy@hsgllp.com
sdanner@hsgllp.com
bgoldman@hgsllp.com

*pro hac vice forthcoming

/s/ Stamatios Stamoulis

Stamatios Stamoulis (No. 4606)
STAMOULIS & WEINBLATT LLC
800 N. West Street, Third Floor
Wilmington, Delaware 19801
stamoulis@swdelaw.com

*Counsel for Plaintiff Zunum Aero, Inc.*